UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN SHAW,

        Plaintiff,

v.                                             Case No. 25-cv-1464-bhl

DEPARTMENT OF CORRECTIONS,
GREEN BAY CORRECTIONAL INSTITUTION,
MICHAEL PREBEG,
WARDEN CHRIS STEVENS,
DREW BLACKBURN,
OFFICER BANKER,
OFFICER WALKER,
LT. MEJIA,
OFFICER DANIEL CUSHING,
GOVERNOR TONY EVERS, and
SECRETARY KEVIN A. CARR,

        Defendants.

## SCREENING ORDER

Plaintiff Ryan Shaw, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Shaw's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Shaw has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Shaw has filed a certified copy of his prison trust account statement for the six-month

period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $1.71. Shaw's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Shaw alleges that Green Bay Correctional Institution is infested with mice. He states that they crawl on him while he is sleeping and leave feces all over his belongings. He also states that on two occasions he found mouse feces in his food. According to Shaw, he has developed allergies, which cause breathing problems, eye problems, rashes, and nausea. He states that medical staff has tried to help him by prescribing multiple medications, but he continues to suffer these symptoms because the mouse infestation persists.

Shaw explains that he has filed inmate complaints and submitted "numerous" request slips to Warden Chris Stevens and Unit Manager Michael Prebeg about the issue, but they have not addressed his concerns. He states that he also has written to the Department of Corrections Secretary Kevin Carr and Governor Tony Evers, but he has not received responses to his letters.

According to Shaw, on February 13, 2024, he awoke to a mouse crawling on him. He states that he could hear other mice squeaking. He asserts that the mouse jumped out of his bed and ran under his cell door. In response to Shaw's inmate complaint about the incident, Prebeg stated that no mice had been seen in the cell hall and that the mouse issue has vastly improved. According to Shaw, Prebeg retaliated against Shaw for filing the inmate complaint by issuing him a conduct report for lying about the mouse infestation. Shaw explains that he contested the inmate complaint, but hearing officer Daniel Cushing did not allow him to question witnesses or view

3

evidence. Shaw asserts that he was found guilty, but he does not specify what discipline, if any, he received.

Shaw also alleges that on February 17, 2024, there were mouse droppings in his food. He states that he did not notice the droppings until after he had eaten some food, after which he became very sick and vomited several times. Correctional Officer Brandon Banker allegedly apologized and acknowledged the mouse problem at the institution. Shaw asserts that Banker wrote an incident report, but his supervisor Alejandra Mejia allegedly did nothing to address the problem. Shaw asserts that he submitted request slips to Warden Stevens and Food Administrator Drew Blackburn[1], but he received no response.

Nearly a year later, on January 4, 2025, Shaw allegedly was again served food with mouse droppings. According to Shaw, Correctional Officer Walker did not write an incident report, although Shaw's complaints to him were captured by his body camera. Shaw alleges that Walker did not do anything to remedy the problem. Shaw asserts that he wrote an inmate complaint. During the investigation, Blackburn stated that the kitchen had not had any signs of mice in months. Shaw asserts that he submitted numerous request slips to Warden Stevens, Prebeg, and Blackburn, but he did not receive any response. Shaw asserts that mouse droppings in inmates' food has been an ongoing problem; these are just the two times he found droppings in his own food.

### THE COURT'S ANALYSIS

Under the Eighth Amendment, "prison officials must take reasonable measures to ensure an inmate's safety." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "To state a claim premised on prison officials' failure to

---

[1] In the caption of the complaint, Shaw identifies Blackburn's first name as "Drew," but Shaw uses "William" in the body of his complaint. The Court does not know which is correct.

protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id*. (citing *Farmer*, 511 U.S. at 837). Courts evaluate the risk an inmate faces on an objective basis; that is, "the allegedly dangerous prison condition must deprive an inmate of the 'minimal civilized measures of life's necessities.'" *Id*. (citing *Farmer*, 511 U.S. at 834). The Seventh Circuit has explained that allegations of prison staff ignoring an extensive, persistent pest infestation are sufficient to state a claim. *See Byrd v. Hobart*, 761 F. App'x 621, 623-24 (7th Cir. 2019).

With the foregoing in mind, the Court will allow Shaw to proceed on Eighth Amendment claims against Warden Stevens and Prebeg based on allegations that they ignored his numerous request slips about the alleged mouse infestation, in which he explained that he had seen mice in his cell and had discovered mouse droppings on his belongings and in his food. Shaw may also proceed on an Eighth Amendment claim against Blackburn, the Food Services Administrator, based on allegations that he disregarded Shaw's complaints about finding mouse droppings in his food, which, according to Shaw, was an ongoing and common problem at the prison. Finally, Shaw states a First Amendment retaliation claim against Prebeg based on allegations that he issued Shaw a bogus conduct report because Shaw filed an inmate complaint about the mouse infestation. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (to plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action.").

Shaw does not, however, state a claim against the remaining Defendants. Shaw alleges that Banker and Walker, the corrections officers to whom Shaw returned his allegedly

5

contaminated food tray, and Mejia, the supervisor who signed off on Banker's incident report, did not nothing to address the problem. But Shaw does not allege that any of them were responsible for allowing the contamination, nor is it reasonable to infer that they had the responsibility or authority to address a prison-wide infestation. Shaw's "contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade . . . [the] rule that public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Low-level staff members who are merely executing their day-to-day job duties (*e.g.*, collecting food trays and signing off on incident reports) are not liable for high-ranking administrative staff's failure to manage the overall operations of the prison. As noted, there is no "general duty of rescue" under §1983. *Id.* For these same reasons, Shaw does not state a claim against Governor Evers or Secretary Carr. The Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights." *Id*. at 595. Prisoners cannot go on letter writing campaigns and demand that every high-ranking official drop everything to investigate a single prisoner's claims. As the Seventh Circuit has observed, the Governor and the Secretary of the Department of Corrections are entitled to relegate to each prison's administration duties such as pest/rodent control. *See id.*

Shaw also does not state a claim against Cushing, the hearing officer who allegedly denied Shaw the opportunity to call witnesses or examine evidence at Shaw's disciplinary hearing. "To succeed on a due process claim stemming from a prison disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Shaw does not state what, if any, discipline he received after being found guilty. Moreover, even if Shaw was placed in segregation, under Seventh Circuit precedent, any stay in segregation for less than six

6

months, standing alone, "is not enough to implicate a liberty interest that triggers due process rights." *Id*. Given the lack of information about how Shaw was disciplined, the Court cannot reasonably infer that he had a constitutionally protected liberty interest.

In any event, even if Shaw had sufficiently alleged that he possessed a protected liberty interest, the Court cannot reasonably infer that his due process rights were violated. The Seventh Circuit has clarified that "inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." *Ealy*, 109 F.4th at 966. "[I]nformal due process requires only that an inmate is provided (1) notice of the reasons for the inmate's placement in segregation and (2) an opportunity to present his views, for instance, in a written statement or at a hearing." *Id*. According to the complaint, Shaw received notice of the charges in the conduct report and was able to present his version of what happened at a disciplinary hearing. Shaw therefore received the process he was due.

Finally, Shaw cannot sue the Department of Corrections or Green Bay Correctional Institution. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), holds that states, their agencies (*i.e.*, the Department of Corrections and prisons), and their employees sued in an official capacity are not "persons" for the purposes of §1983 and therefore cannot be sued for damages.

**IT IS THEREFORE ORDERED** that Shaw's motion for leave to proceed *in forma pauperis* (Dkt. No. 6) is **GRANTED**, and his partial motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Shaw fails to state a claim against the Department of Corrections, Green Bay Correctional Institution, Officer Banker, Officer Walker, Lt. Mejia,

Officer Daniel Cushing, Governor Tony Evers, and Secretary Kevin A. Carr, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Shaw's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Warden Chris Stevens, Michael Prebeg, and Food Services Manager Drew (or, perhaps, William) Blackburn.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Stevens, Prebeg, and Blackburn shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Shaw is located.

**IT IS FURTHER ORDERED** that the agency having custody of Shaw shall collect from his institution trust account the $348.29 balance of the filing fee by collecting monthly payments from Shaw's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Shaw is transferred to another institution, the transferring institution shall forward a copy of this Order along with Shaw's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will

scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Shaw is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on October 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge